UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES STURDEVANT III,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | Case No. ED CV 11-1179-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI").  He claims that the Administrative Law Judge ("ALJ") erred when he: (1) rejected a treating psychiatrist's opinion; and (2) found that Plaintiff was not credible.  For the reasons discussed below, the Agency's decision is reversed and the case is remanded for further consideration.

## II.  SUMMARY OF PROCEEDINGS

In April 2007, Plaintiff applied for SSI, alleging that he was disabled due to depression with psychosis, migraines, and right shoulder pain.  (Administrative Record ("AR") 83, 121-23, 136.)  His

application was denied initially and on reconsideration. (AR 79, 80, 83-93.) He then requested and was granted a hearing before an ALJ. (AR 95, 97-98.) On November 18, 2009, he appeared with counsel for the hearing. (AR 46-78.) On December 17, 2009, the ALJ issued a decision denying benefits. (AR 7-18.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-3, 5.) This action followed.

## III.   ANALYSIS

A.   The Treating Psychiatrist's Opinion

Plaintiff contends that the ALJ erred when he rejected the opinion of treating psychiatrist Marc Stolar, who concluded in, essence, that Plaintiff's severe mental illness prevented him from working. (AR 513.) The ALJ gave very little weight to this opinion, finding instead that Plaintiff would be able to perform work involving simple tasks that did not involve contact with the public as determined by the reviewing psychiatrists. (AR 13-15.) For the following reasons, the Court concludes that further consideration of this issue is warranted.

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (explaining that a treating physician's opinion "is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual'" (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987))). For this reason, generally speaking, a treating physician's opinion that is well-supported and not inconsistent with other substantial evidence in the record will be given controlling weight. *Orn*, 495 F.3d at 631.

That being said, however, an ALJ is not required to simply accept a treating doctor's opinion. Where, as here, the opinion is contradicted by another doctor's opinion, the ALJ is empowered to reject it for specific and legitimate reasons that are supported by substantial evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)); *Morgan*, 169 F.3d at 600.[1]

On September 15, 2008, Dr. Stolar completed a pre-printed, "Narrative Report" form, circling various options to indicate Plaintiff's condition. (AR 511.) Dr. Stolar noted that Plaintiff's memory and judgment were intact and that he would be able to maintain a sustained level of concentration and manage funds. (AR 511.) Because he had seen Plaintiff only once at the time of the report, however, he indicated that it was "unknown" whether Plaintiff would be able to sustain repetitive tasks for an extended period, adapt to new or stressful situations, interact appropriately with co-workers and supervisors, and complete a 40-hour work week without decompensating. (AR 511.) Ultimately, he diagnosed Plaintiff with schizoaffective disorder. (AR 511.)

In an August 7, 2009, hand-written, two-paragraph, "To Whom It May Concern" letter, Dr. Stolar wrote that he had been treating Plaintiff for one year. (AR 513.) He again diagnosed him with schizoaffective disorder, but this time bipolar type. (AR 513.) Dr. Stolar also opined that, due to Plaintiff's mental illness, he would

---

[1] Dr. Stolar's opinion was contradicted by reviewing psychiatrists H.M. Skopec and Edward O'Malley, both of whom determined that Plaintiff could perform simple repetitive tasks not involving contact with the public. (AR 404, 506-08.)

1  not be able to maintain a sustained level of concentration, perform
2  repetitive tasks for an extended period of time, interact
3  appropriately with co-workers and supervisors, or work a 40-hour week
4  without decompensating.  (AR 513.)
5       The ALJ rejected Dr. Stolar's opinion because it was not
6  supported by any objective findings and did not include even the most
7  basic information, such as how often he had seen Plaintiff,
8  Plaintiff's response to medication, and whether other therapy
9  modalities had been tried.  (AR 15.)  The ALJ also noted that Dr.
10 Stolar had not mentioned any objective signs or symptoms to support
11 his opinion.  (AR 15.)  Moreover, although Dr. Stolar stated in August
12 2009 that he had been treating Plaintiff for a year, he did not
13 provide any treatment notes documenting this treatment.  (AR 15.)
14      These are legitimate reasons for rejecting Dr. Stolar's opinion.
15 *See Thomas,* 278 F.3d at 957 (holding ALJ not required to accept
16 treating physician's opinion that is brief, conclusory, and
17 inadequately supported by clinical findings); *Crane v. Shalala*, 76
18 F.3d 251, 253 (9th Cir. 1996) (holding ALJ may reject "check-off
19 reports that [do] not contain any explanation of the bases of their
20 conclusions.").  And there is support in the record for the ALJ's
21 findings.  The problem with these findings, however, is that the
22 record is woefully incomplete regarding Dr. Stolar's work.  The only
23 records from Dr. Stolar are his 2008 check-the-box form and his 2009
24 letter.  (AR 511, 513.)  It is impossible to assess the relevance of
25 Dr. Stolar's opinion on this record and, as explained below, both the
26 ALJ and Plaintiff should have done more to obtain the records to do
27 so.
28

The ALJ had a special duty to "fully and fairly" develop the record. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). This included obtaining Dr. Stolar's medical records that presumably support his opinion that Plaintiff was disabled. *Id.* ("If the ALJ thought he needed to know the basis of [the treating doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.").

Plaintiff also had a duty to obtain the records as he had the burden of establishing that he is disabled. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("[A]t all times, the burden is on the claimant to establish his entitlement to disability insurance benefits.") (citation omitted). Not only is this duty clearly set out in the regulations and the case law, the Agency sent Plaintiff's counsel--a seasoned social security lawyer--a letter in September 2009, reminding him of this obligation. (AR 232-33.) Two months later, counsel faxed Dr. Stolar's two-paragraph letter in which Dr. Stolar summarily concluded that Plaintiff was disabled. (AR 512-13.) This letter, by itself, is hardly worth the paper it is written on and counsel should have known that. The earlier one-page opinion that Dr. Stolar prepared the day he met Plaintiff is even less valuable. The value of a doctor's opinion is based on underlying medical records that support the opinion. Without them, a doctor's opinion is not worth much.

The weight to be attributed to a doctor's opinion is based on the underlying medical records that support the opinion. Without them, the opinion is not worth much. If all it took to obtain disability benefits was a letter from a treating physician that a claimant was

disabled, there would be no need for the administrative process.  All that the Agency would need to conduct its business would be a fax machine, a checkbook, and a bookkeeper authorized to write checks.

The Agency argues that the ALJ's decision should be affirmed because he relied on reviewing psychiatrists Skopec and O'Malley's opinions that Plaintiff was not disabled and these opinions amounted to substantial evidence.  The Court does not agree.  To begin with, these doctors did not consider Dr. Stolar's opinions, which were prepared after they offered their opinions.  (AR 402-09, 506-08, 511, 513.)  Further, though the reviewing doctors correctly pointed out that Plaintiff's doctors at Riverside Community Mental Health Clinic reported that he was stable when he was compliant with his medications (AR 312, 314, 315, 385, 406, 408, 468), stable is not the same as unimpaired.  For example, at times when Riverside staff were reporting that Plaintiff was stable, they were also reporting that he was hallucinating and/or having delusions.  (AR 312, 314.)  Presumably, it would be difficult if not impossible for Plaintiff to hold down a job while experiencing delusions and hallucinations even if he was "stable."

For these reasons, remand is required.  If Plaintiff wants the Agency and the Court to seriously consider Dr. Stolar's opinion, he needs to provide Dr. Stolar's records so that his opinion can be evaluated.  If Plaintiff fails again to supply the records, the ALJ should contact Dr. Stolar and obtain them on his own.  If no records

are forthcoming and it is impossible to tell what Dr. Stolar based his opinion on, the opinion should be disregarded.[2]

    B.    The Credibility Finding

Plaintiff argues that the ALJ erred when he found that Plaintiff was not credible. He contends that the ALJ's justifications for this finding were inadequate. (Joint Stip. at 12-14.) For the following reasons, the Court remands this issue as well.

ALJs are tasked with judging the credibility of witnesses. In doing so, they may rely on ordinary credibility evaluation techniques. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Where a claimant produces objective medical evidence of an impairment that reasonably could be expected to produce the alleged symptoms, an ALJ may not discount the testimony without providing "specific, clear and convincing reasons." *Smolen,* 80 F.3d at 1281.

Plaintiff testified that his short-term memory was very poor; he suffered from visual hallucinations, auditory hallucinations, and night terrors; and he was subject to extremes of emotions, which included the desire to hit other people or himself. (AR 55, 57-59, 63-64.) He also testified that his medications helped him "a little bit" but that the relief did not last long. (AR 57.) He explained further that he thought about suicide "all the time." (AR 61.)

The ALJ found that the objective evidence did not support these allegations. (AR 16.) This is a legitimate basis for questioning a claimant's testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th

---

[2] It appears that it would also be beneficial to have a consulting psychiatrist evaluate Plaintiff and provide a report. In lieu of that, perhaps a medical expert could testify at the hearing to assist in assessing Plaintiff's condition.

Cir. 2012) (affirming ALJ's credibility determination in part because claimant's allegations were undermined by doctor's reports and inconsistent with other medical evidence in the record); *Morgan*, 169 F.3d at 599-600 (upholding ALJ's credibility determination in part because psychiatric reports of claimant's symptoms undermined his complaints).  Furthermore, the record, as it stands, supports the ALJ's determination as his health care providers routinely found him to be in relatively good condition.  (AR 329-31 (social worker upon examination noting Plaintiff's concentration was good, his memory was intact, and his thought processes were normal but Plaintiff "reported grossly exaggerated" symptoms, his mood was incongruent with his reports, and the content of his reported auditory and visual hallucinations were "vague and grossly exaggerated."); AR 305 (social worker noted on mental status exam form that, although Plaintiff was depressed and his affect flat, he was oriented times four and alert, his concentration was good, and his memory was intact); AR 305 (Plaintiff reported to social worker that symptoms had "minimized" since he had been compliant with his medications); AR 310-15 (treating psychiatrist Patel noted that Plaintiff had no suicidal ideations and his sleep was "OK," generally doing well on medication, anxiety decreased, no more than occasional delusions and no suicidal ideations).)  The problem with the ALJ's finding, however, is that the record he relied on to reach it is incomplete because Dr. Stolar's treatment records are not included.  Thus, the ALJ was unable to consider them in evaluating Plaintiff's credibility.  On remand, he will have that opportunity.

 The ALJ's second justification for questioning Plaintiff's credibility was that Plaintiff did not fully comply with his treatment

plan, failed to consistently take his psychotropic medications, and failed to attend psychiatric appointments, job counseling sessions, and vocational rehabilitation classes. (AR 16.) Generally speaking, these are valid reasons for discounting a claimant's testimony. *See Molina*, 674 F.3d at 1113-14; *Smolen,* 80 F.3d at 1284 (explaining ALJ may consider claimant's failure to follow a prescribed course of treatment in evaluating credibility), and there is some support for them in the record. (AR 376, 377, 381, 384, 385, 492.) It is not clear, however, whether Plaintiff's alleged schizoaffective-bipolar disorder had any impact on his ability to follow his treatment plan. *See, e.g., Pate-Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009) (holding ALJ cannot rely on schizoaffective/bipolar claimant's failure to comply with treatment plan as evidence that she was not credible since failure to comply was manifestation of schizoaffective/bipolar disorder).

On remand, the ALJ should reconsider Plaintiff's credibility based on the record before him at that time. Assuming that the ALJ will take into account Plaintiff's compliance or lack thereof with his treatment program, he should explain how Plaintiff's condition does or does not impact his ability to comply with the program.

## IV. CONCLUSION

For these reasons, the Agency's decision is reversed and the case is remanded for further consideration.[3]

IT IS SO ORDERED.

DATED: October 17, 2012

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\STURDEVANT, 1179\memo opinion and order.wpd

---

[3] The Court has considered Plaintiff's request that the case be remanded for an award of benefits and finds that this relief is not warranted here because it is not clear whether Plaintiff is disabled.